**Laura M. BROWN, Guardian ad Litem for Danielle Paige Brown, a minor, Plaintiff,**

v.

**SHREDEX, INC., Automated Systems, Inc., and the United States of America, Defendants.**

**No. 2:98–2605–18.**

United States District Court, D. South Carolina, Charleston Division.

Aug. 12, 1999.

Jack D. Cordray, Charleston, SC, William J. Cook, Barnwell, SC, Terry Richardson, Barnwell, SC, Joel Chastain, Barnwell, SC, for plaintiff.

Harvey Brockinton, Charleston, SC, Steve Darling, Charleston, SC, Joe Griffith, Charleston, SC, for defendant.

## ORDER

NORTON, District Judge.

This matter comes before the court on Defendant United States' Motion for Leave to File a Third–Party Complaint against Plaintiff's parents, alleging causes of action for contribution and equitable indemnification.

### I. BACKGROUND

This products liability case arises out of an injury the infant Plaintiff received when her father, who worked for the United States Navy, took her to work and let her feed paper into the paper shredder at his office. These shredders are manufactured by Geha–Werke in Germany. Pursuant to a distribution agreement, Geha–Werke sells these shredders to Shredex, an American distributor, FOB at a port in Germany. Shredex then sells these shredders to a sub-distributor, Automated Systems, pursuant to a distribution agreement between these two companies. Automated Systems then sells these shredders to the United States General Services Administration (GSA). GSA then distributed the shredder at issue in this case to the Navy base in Charleston, South Carolina, via common carrier.

### II. PROCEDURAL HISTORY

On September 4, 1998, Plaintiff filed this suit against the above-named Defendants, alleging causes of action under the theories of negligence, breach of warranty,

strict liability, and breach of post-manufacture/sale duty. On March 26, 1999, Defendant United States filed a Rule 14 Motion for Leave to File a Third–Party Complaint, seeking to implead the parents of the infant Plaintiff as defendants in this action, based on claims of contribution and equitable indemnification. At a hearing on June 29, 1999, this motion was granted in part and denied in part. Specifically, the court granted Defendant United States' motion as to the contribution and equitable indemnification claims against Plaintiff's father, Stephen Brown, while it denied the motion as to the contribution and equitable indemnification claims against Plaintiff's mother, Laura Brown. Before the conclusion of the hearing, Plaintiff's counsel presented the court with four cases, not previously cited by either party, that Plaintiff insisted would affect the outcome of this motion. The court has examined these cases to determine whether it should change its ruling on the contribution and the equitable indemnification claims against Plaintiff's father.

### III. LAW/ANALYSIS

#### A. Contribution

Even after examining the cases Plaintiff submitted at the hearing, the court concludes that Defendant United States may implead its claim for contribution against Plaintiff's father. Plaintiff filed suit against the United States under the Federal Tort Claims Act (FTCA). "In actions brought under the FTCA, federal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred." *Myrick v. United States*, 723 F.2d 1158, 1159 (4th Cir.1983). Because this accident occurred in South Carolina, this state's substantive law applies. South Carolina substantive law recognizes the right of contribution among tortfeasors. *See* S.C.Code Ann. §§ 15–38–20, –40 (Supp.1998). "The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share." S.C.Code Ann. § 15–38–20(B) (Supp.1998). The

South Carolina Supreme Court has recognized the distinction between the accrual of the equitable, inchoate right to contribution and maturation of the right to recover contribution. *See Cousar v. New London Eng'g Co.*, 306 S.C. 37, 410 S.E.2d 243, 244 (1991). Quoting from a District of South Carolina decision, which in turn had quoted from a Supreme Court of Virginia case, the South Carolina Supreme Court noted that

'[t]here is a valid distinction between the accrual of the equitable, inchoate right to contribution that arises at the time of jointly negligent acts and the maturation of the right to recover contribution that arises only after payment of an unequally large share of the common obligation. Stated differently, the right to recover contribution arises only when one tortfeasor has paid or settled a claim for which other wrongdoers are also liable, while the cause of action for contribution arises at the time of the jointly negligent acts.'

*Id.* (*quoting Lightner v. Duke Power Co.*, 719 F.Supp. 1310, 1315 (D.S.C.1989)). Despite having made such a subtle, yet important, distinction, the supreme court subsequently ignored this distinction and held that because "the right to contribution does not arise prior to payment," there is no "existing right" upon which a third-party plaintiff could file an impleader action for contribution. *See First Gen. Servs. of Charleston, Inc. v. Miller*, 314 S.C. 439, 445 S.E.2d 446, 448 (1994); *Southeastern Freight Lines v. City of Hartsville*, 313 S.C. 466, 443 S.E.2d 395, 396 n. 1 (1994) (noting in dicta that "the right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share [so that in] the absence of a ripe claim for contribution, it is questionable whether joint tortfeasors are subject to Rule 14, SCRCP"). Therefore, under South Carolina law, Defendant United States would not be permitted to assert its contribution claim in a third-party action filed pursuant to South Carolina Rule of Civil Procedure 14.

Nevertheless, this court ruled at the hearing that Rule 14 of the Federal Rules of Civil Procedure trumps this state-law rule so that Defendant United States may assert a claim for contribution in its third-party complaint. Federal Rule of Civil Procedure 14 permits claims for contribution to be filed in third-party actions so long as the governing substantive law recognizes a right of contribution. *See* Fed.R.Civ.P. 14(a); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1448, at 386 (1990). South Carolina substantive law recognizes such a right, but limits its assertion so that a tortfeasor has to file a separate action for recovery after he has paid out more than his pro rata share. *See* S.C.Code Ann. § 15–38–20(B) (Supp.1998); *First Gen. Servs. of Charleston, Inc.,* 445 S.E.2d at 448. Because the inchoate right to contribution after payment is clearly substantive, the key question becomes whether the rule regarding when this right may be asserted is a matter of substance or procedure. If the rule is substantive, then it must be followed by this court. *See Myrick v. United States,* 723 F.2d 1158, 1159 (4th Cir.1983). If the rule is procedural, then this court must apply Federal Rule of Civil Procedure 14 instead, so long as it comports with the Rules Enabling Act. *See Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

Recognizing that the line between substance and procedure is often difficult to draw, the court found at the hearing that the state-law rule was basically procedural. Procedure is " 'the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.' " *Hanna v. Plumer,* 380 U.S. 460, 464, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (*quoting Sibbach v. Wilson & Co.,* 312 U.S. 1, 14, 61 S.Ct. 422, 85 L.Ed. 479 (1941)). The South Carolina Contribution Among Tortfeasors Act and the decisional law interpreting it mandate that the enforcement of the right to contribution occur by separate action after a tortfeasor has paid more than his pro rata

share of the judgment. *See* S.C.Code Ann. § 15–38–20(B) (Supp.1998); *First Gen. Servs. of Charleston, Inc. v. Miller,* 314 S.C. 439, 445 S.E.2d 446, 448 (1994). Regardless of whether the contribution question is litigated as a third-party action or as a separate action, the outcome in principle ought to be the same. As a result, this court found the rule to be basically procedural.

Professor Moore agrees with this outcome:

[I]f the governing law recognizes a substantive claim, its accrual and the method of its presentation are properly regarded as procedural for *Erie* purposes. Indeed, as the Supreme Court made clear in *Hanna v. Plumer,* when a Federal Rule is directly on point and conflicts with state practice, the Federal Rule governs. Thus, the *impleader rule properly applies to accelerate the claim even if state law does not permit its accrual or assertion until after the defendant incurred a loss.*

3 James Wm. Moore et al., *Moore's Federal Practice* § 14.05[2] (3d ed.1997) (emphasis added); *see also id.* § 14.07 ("As long as the governing substantive law recognizes a claim, impleader is proper even if the claim does not arise until one joint tortfeasor discharges the common liability to the plaintiff."). Bucking the conventional wisdom that academics cannot agree, Professors Wright and Miller observe that:

it is not critical that state substantive law does not recognize a right to contribution until the original defendant has paid more than his pro rata share. Any judgment on the third-party claim does not become enforceable until after the common liability has been discharged by the original defendant. *Impleader under Rule 14 merely accelerates the determination of liability and does not have the effect of enlarging substantive rights.*

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1448, at 388–89 (1990) (emphasis added); *see also United States Surgical*

*Corp. v. John K. Pulsifer & Co.,* 119 F.R.D. 18, 20 (D.Md.1988) (finding that a contribution claim may be asserted in federal court against a third-party defendant, even though that claim has not yet accrued under state law).

■ Once this ·court has determined that the state-law rule is procedural and is in conflict with Rule 14, the latter takes precedence over the conflicting state-law rule so long as Rule 14 is valid under the Rules Enabling Act. *See Hanna v. Plumer,* 380 U.S. 460, 470–71, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Under this Act, the Rule must be within the Supreme Court's "power to prescribe general rules of practice and procedure" and "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(a), (b) (1994). Although following the Federal Rule would alter the method of enforcing the state substantive right to contribution, the United States Supreme Court has noted that "[t]o hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." *Hanna,* 380 U.S. at 473, 85 S.Ct. 1136; *see also Burlington Northern R.R. Co. v. Woods,* 480 U.S. 1, 5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) ("The cardinal purpose of Congress in authorizing the development of a uniform and consistent system of rules governing federal practice and procedure suggests that Rules which incidentally affect litigants' substantive rights do not violate this provision if reasonably necessary to maintain the integrity of that system of rules."). The court is not aware of any Federal Rule that has been found to violate the "substantive" term of the Act, and the court can conceive of no reason why

Rule 14 would do so either. *See Woods,* 480 U.S. at 6, 107 S.Ct. 967 ("[T]he study and approval given each proposed Rule by the Advisory Committee, the Judicial Conference, and [the Supreme] Court, and the statutory requirement that the Rule be reported to Congress for a period of review before taking effect give the Rules presumptive validity under both the constitutional and statutory restraints.") (citations omitted); *Hanna,* 380 U.S. at 471, 85 S.Ct. 1136 ("[T]he court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions."). Consequently, Rule 14 takes precedence over the state-law rule prohibiting the assertion of the third-party complaint for contribution so that Defendant United States may assert such a claim against Plaintiff's father in this case.

Based on the four cases submitted to the court at the hearing, Plaintiff argues that this analysis is incorrect. The court disagrees. Three out of the four submitted cases involved an analysis of the same West Virginia law on contribution.[1] *See Baltimore & O.R.R. Co. v. Saunders,* 159 F.2d 481, 484–86 (4th Cir.1947); *Lewis v. City of Bluefield,* 48 F.R.D. 435, 437–40 (S.D.W.Va.1969); *Wolfe v. Johnson,* 21 F.R.D. 280, 282 (N.D.W.Va.1958). In *Saunders,* the Fourth Circuit observed that, under the West Virginia contribution statute, "it is only upon a joint judgment that relief by way of contribution may be asked." *Saunders,* 159 F.2d at 485. The court reasoned that because "a joint judgment could not be obtained without the plaintiffs' consenting to amend their complaint, which they were unwilling to do,

1. The other case found that the inchoate right to contribution and the right regarding when it is actually asserted are both substantive for purposes of *Erie* and so must be applied by the district court. *See Brooks v. Brown,* 307 F.Supp. 907, 909–10 (E.D.Va.1969). When the assertion of the right is considered substantive, rather than procedural, then the federal court is without power to permit a third-party plaintiff to file a complaint based on a contribution claim. For the reasons stated in this Order, the court disagrees with the Eastern District of Virginia.

there was no possible basis" for granting the third-party plaintiff's motion for leave to file a third-party complaint for a contribution claim. *See id.; see also* 3 James Wm. Moore et al., *Moore's Federal Practice* § 14.05[2] (3d ed. 1997) ("Impleader is not proper if the applicable substantive law conditions the contribution claim on a joint judgment against the joint tortfeasors."). In *Wolfe*, the Northern District of West Virginia, faced with a similar issue, followed the *Saunders* decision and found that "a defendant cannot implead as a third-party defendant an alleged joint tortfeasor on the theory of contribution." *Wolfe*, 21 F.R.D. at 282. Finally, in *Lewis*, the Southern District of West Virginia followed the lead of *Saunders* and *Wolfe*.

These three cases may be distinguished from the instant case based upon the underlying statute, which differs in at least one material respect from the South Carolina contribution statute. As noted earlier, the South Carolina statute is based on the principle that "[t]he right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability." S.C.Code Ann. § 15–38–20(B) (Supp.1998). In contrast, the West Virginia statute at issue in the three cases submitted by Plaintiff permits a defendant to bring an action for contribution against a joint tortfeasor only upon a *joint judgment* in favor of the plaintiff against the tortfeasors. "Rule 14 has consistently been held to have different effects on substantive rights depending on which of these two types of contribution statutes is being applied." *Connors v. Suburban Propane Co.*, 916 F.Supp. 73, 79 (D.N.H. 1996). In a well-reasoned decision, the District of New Hampshire outlined the differences:

> When a state contribution cause of action is conditioned only upon the original defendant discharging common liability to the original plaintiff, Rule 14 has been held to permit impleader of third-party defendants.... Rule 14 can be used to accelerate the defendant's cause of action for contribution without abridging, enlarging or modifying substantive

rights in violation of the Rules Enabling Act.

. . . .

> [In contrast,] statutes that allow contribution claims between joint torfeasors only upon a joint judgment against those tortfeasors cannot be "accelerated" without necessarily modifying substantive rights of the parties in violation of the Rules Enabling Act.... Applying Rule 14 to allow a single defendant to implead other third-party contribution defendants would abridge the plaintiff's substantive right to exclude parties he or she does not wish to sue, and that practice would, concomitantly, 'enhance the substantive rights of the original defendant over what is given by state law.' When the contribution cause of action is conditioned upon joint judgment, then, application of Rule 14 to permit impleader would violate the Rules Enabling Act.

*Id.* at 80 (*quoting D'Onofrio Constr. Co. v. Recon Co.*, 255 F.2d 904, 906 (1st Cir. 1958)). Because the South Carolina contribution statute does not require a "joint judgment" and is based instead on a defendant's payment beyond its pro-rata share, this court finds that Defendant United States' assertion of its contribution claim against Plaintiff's father does not violate the Rules Enabling Act. Consequently, it may assert this claim in a third-party complaint, even though the same action could not be maintained in state court until after the right of contribution has arisen once payment has been made.

## B. Equitable Indemnification

■ Defendant United States sought to implead Plaintiff's parents as third-party defendants on the theory of equitable indemnification. At the hearing, this court ruled that Defendant United States could assert an equitable indemnity claim against Plaintiff's father, an employee of the United States, but not against Plaintiff's mother. Although she did not discuss the precedent in her brief, Plaintiff argued at the hearing that the United

States could not seek indemnity from one of its employees, citing *United States v. Gilman,* 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954). In *Gilman,* the United States filed a third-party suit for indemnification against the individual employee whose negligence caused the accident. The Court addressed the issue of "whether the United States may recover indemnity from one of its employees after it has been held liable under the Federal Tort Claims Act." *Id.* at 507, 74 S.Ct. 695. The Supreme Court held that the government could not maintain the action against its employee even though state law would have allowed such a suit. *See id.* at 511–13, 74 S.Ct. 695. The Court based its decision on Congress's failure to address the question when it enacted the FTCA and upon substantial legislative history which suggested that Congress did not ·intend to allow the government to sue its employees for indemnification. *See id.* at 509–13, 74 S.Ct. 695. The court has been unable to find any precedent either overruling *Gilman,* or calling its principal holding into question. *See, e.g. Overseas Nat'l Airways, Inc. v. United States,* 766 F.2d 97, 102 (2d Cir.1985) (discussing the now forty-five year-old *Gilman* precedent). Consequently, based on such well-settled precedent (inexplicably not presented to the court until oral argument), this court revises its ruling on the equitable indemnification claim so as to preclude Defendant United States from asserting this claim against Plaintiff's father, one of its employees.

For the foregoing reasons, it is therefore,

**ORDERED,** that Defendant United States' Motion for Leave to File a Third–Party Complaint be **GRANTED** in part and **DENIED** in part.[2]

**AND IT IS SO ORDERED.**

---

2. Based on this Order, Defendant United States is permitted to assert only its contribu-

tion claim against Plaintiff's father in its third-party complaint.